**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

RONALD A. CHAVEZ,

       Plaintiff,

v.                                                                                                                                                               No. 1:19-cv-00754-RB-KRS

UNITED STATES DEPARTMENT OF
LABOR, ENERGY EMPLOYMENT
OCCUPATIONAL ILLNESS
COMPENSATION PROGRAM,
OFFICE OF WORKERS COMPENSATION,

       Defendant.

**MEMORANDUM OPINION AND ORDER**

      Congress passed the Energy Employees Occupational Illness Compensation Program Act (EEOICPA) to provide benefits to employees working with toxic material. As a contractor at the United States Department of Energy for about 14 years, Plaintiff Ronald A. Chavez was subject to EEOICPA. In 2005, Chavez was diagnosed with lymphoma and filed claims with Defendant United States Department of Labor's Office of Workers Compensation Program (OWCP). Chavez received monetary benefits for injuries and lost wages, but he was never compensated for his depression, which is allegedly tied to his other physical ailments. Before the Court is Chavez's Brief in Support of Petition for Review of Final Agency Decision. (Doc. 15.) After considering the parties' briefs, the statutory framework, and the administrative record, the Court believes that the agency's decision to deny benefits for Chavez's depression was not arbitrary and capricious.

**I.     Background**

    **a.  Office of Workers Compensation Program: Claims Process**

Congress passed the EEOICPA to provide benefits to certain individuals with illnesses stemming from toxic materials and radiation exposure during their employment. *See* 42 U.S.C. § 7384. Part B provides that covered individuals may receive benefits up to a lump sum of $150,000, in addition to other medical benefits. *Id.* § 7384s. Part E addresses additional compensation for contractors with covered illnesses. *Id.* §§ 7385s–7385s-16. The maximum compensation under Part E "shall not exceed $250,000." *Id.* § 7385s-12.

Individuals can receive these employment benefits after filing claims with the OWCP. *See* 20 C.F.R. § 30.100. Upon receipt and evaluation of the claim, OWCP makes recommendations. *See id.* § 30.300. Depending on the outcome of its findings, the claimant has 60 days to object before the Final Adjudication Branch (FAB). *See id.* § 30.310(a). After considering the objections and conducting an informal hearing, FAB issues a final decision. *See id.* § 30.314; 30.316. If rejected, the claimant has another 30 days to move the agency to reconsider. *See id.* § 30.319(a). If that request is denied, the decision is final. *See id.* § 30.319(c).

OWCP awards benefits by assessing the claimant's injury and issuing an impairment rating—expressed as a percentage—then multiplying that rating by $2,500. 42 U.S.C. § 7385s-2(a)(1). This recommendation is based on the American Medical Association Guide to the Evaluation of Permanent Impairment (AMA Guide). *See id.* § 7385-2(b). With mental impairments, however, the rating will not include illnesses that do not "originate from a documented physical dysfunction of the nervous system . . . ." 20 C.F.R. § 30.910(b). In addition to benefits tied to the physical impairment itself, claimants can also receive compensation for lost wages. *See* 42 U.S.C. § 7385s-2(a)(2).

### b. Chavez's Procedural History

Chavez worked for the Department of Energy (DOE) as a contract employee intermittently from August 1, 1988, to February 1, 2002. (AR at 1201–04.) During his tenure, he was exposed to various toxic substances and radiation. (*Id.*) On September 20, 2005, Chavez was diagnosed with B-cell lymphoma. (Doc. 1 (Compl.) ¶ 16.)

Chavez initially filed his claim under EEOICPA Parts B and E on December 8, 2005. (AR at 3526.) After reviewing his history, FAB issued $150,000 in compensation under Part B. (AR at 1199–1218.) On November 9, 2015, FAB issued $130,000 for wages lost from 2005–2013 due to Chavez's lymphoma, loss of saliva, and loss of taste and smell. (AR at 526–27.) In addition, FAB accepted a 19-point impairment rating related to these injuries and awarded Chavez an additional $47,500. (AR at 452–53.) Subsequent FAB decisions compensated Chavez for wages lost from 2014–2016 ($45,000) (AR at 162–63) and 2017 ($15,000) (AR at 120). These four FAB decisions totaled $237,500 in related compensation under Part E of EEOICPA.

On June 20, 2018, Chavez filed an additional claim for increased impairment benefits of $37,500, resulting from a related depression diagnosis. (AR at 126–40.) Dr. Gerald S. Fredman evaluated Chavez and drew the following conclusion:

> It is my opinion that it is at least as likely as not that Mr. Chavez['s] covered conditions (cancer diagnosis and treatment, facial disfigurement, dry mouth due to loss of saliva, and loss of taste and smell) caused and contributed to his psychiatric diagnosis and impairment. Due to this psychiatric condition of major depressive disorder, he cannot work at this time. There would be moderate limitations with following detailed or complex instructions, marked limitations working without supervision, moderate limitations interacting with the public and marked limitations interacting with coworkers and supervisors. Additionally, there would be marked limitations adapting to changes in a workplace setting.

(AR at 139.) Upon review, OWCP informed Chavez that it was denying this claim because the depression was not "related to a documented physical dysfunction of the nervous system." (AR at

84.) Consequently, Chavez requested a hearing, which was held on February 7, 2019. (AR at 30–49.) On April 2, 2019, FAB denied Chavez's claim, again holding that the depression was not linked to an underlying nervous system disorder. (AR at 16–29.) Chavez moved FAB for reconsideration but submitted no new evidence in support. (AR at 11–14.) FAB denied reconsideration on June 19, 2019. (AR at 2.)

Chavez filed his Complaint in district court on August 20, 2019, and his Brief in Support of Petition for Review of Final Agency Decision on February 17, 2020 (Doc. 15). DOL responded on March 18, 2020. (Doc. 16.)

## II.     Legal Standard

A claimant "adversely affected or aggrieved by [an OWCP] final decision . . . may review that order in the United States district court . . . ." 42 U.S.C. § 7385s-6(a). The court has the authority to "modify or set aside such decision only if the court determines that such decision was *arbitrary and capricious*." *Id.* (emphasis added). "Because of the strong similarities between the language Congress used to authorize judicial review of EEOICPA determinations and the language of the Administrative Procedure Act, courts have reviewed Part E final decisions as they would under the 'arbitrary or capricious' standard in the Administrative Procedure Act (APA)." *Lucero v. U.S. Dep't of Labor*, No. 14-CV-00999, 2016 WL 9819533, at *7 (D.N.M. Aug. 5, 2016) (citations omitted).

Under the APA, district courts can "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; . . . in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; . . . [or] without observance of procedure required by law . . . ." 5 U.S.C. § 706(2). To determine whether an action is arbitrary and capricious, district courts take a "thorough,

probing, in-depth review" of the administrative record that the parties provide. *Wyoming v. United States*, 279 F.3d 1214, 1238 (10th Cir. 2002) (quotation omitted); *Franklin Sav. Ass'n v. Dir., Office of Thrift Supervision*, 934 F.2d 1127, 1137 (10th Cir. 1991). The Tenth Circuit has held:

> An agency's decision is arbitrary and capricious if the agency (1) entirely failed to consider an important aspect of the problem, (2) offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise, (3) failed to base its decision on consideration of the relevant factors, or (4) made a clear error of judgment.

*New Mexico ex rel. Richardson v. Bureau of Land Mgmt.*, 565 F.3d 683, 704 (10th Cir. 2009) (quotation marks omitted) (quoting *Utah Envtl. Cong. v. Troyer*, 479 F.3d 1269, 1280 (10th Cir. 2007)).

### III. Discussion

Before reaching the merits, the Court acknowledges that awarding Chavez's request for $37,500 would exceed EEOICPA's $250,000 benefit ceiling. *See* 42 U.S.C. § 7385s-12. To date, Chavez has received $237,500 under Part E. As a result, the Court is limited to awarding a maximum benefit of $12,500. Chavez acknowledged this limit in his Reply (Doc. 18 at 3 n.2), so the Court will proceed with the $12,500 benefit amount in mind.

Chavez argues that his depression diagnosis was a byproduct of his lymphoma, and DOL mistakenly excluded his mental impairment when determining its final benefit rating. (Doc. 15 at 8–9.) Chavez emphasizes that the percentage rating can be "the result of *any covered illness*." (*Id.* at 9 (citing 42 U.S.C. § 7385s-2).) Citing the DOL Manual, Chavez claims that psychological conditions "can arise as a consequence of the accepted illness and/or treatment of that condition. . . . Depression, anxiety, and/or chemical imbalance are a few examples of psychological conditions that may have no physiological basis." (*Id.* at 10 (citing AR at 28).)

Finally, Chavez states that DOL relied on the wrong provisions in the AMA Guide, which treated the depression like a purely psychiatric issue instead of a social, behavioral condition. (*Id.* at 11.)

The Court first notes that its role is not to question DOL's factual findings, but rather to assess whether the agency behaved in an arbitrary and capricious manner. The final DOL decision held that, despite Dr. Fredman's credentials, he "did not provide an impairment evaluation report that addresses [Chavez's] covered illness of nodular lymphoma, anosmia, dry mouth, and facial disfigurement. Additionally, [Chavez] did not submit any medical evidence to confirm that [his] depression related to a physical dysfunction of [his] nervous system." (AR at 24 (citing EEOICPA Procedure Manual, Ch. 21.8.a).)

While Dr. Fredman's report does appear to link Chavez's physical ailments to his depression (AR at 138–39), the EEOICPA requires more than a causal connection. Rather, its implementing regulation states that:

> A mental impairment that does not originate from a documented physical dysfunction of the nervous system, and cannot be assigned a numerical percentage using the AMA's Guides, will not be included in the impairment rating for the employee. Mental impairments that are due to documented physical dysfunctions of the nervous system can be assigned numerical percentages using the AMA's Guides and will be included in the rating.

20 C.F.R. § 30.910(b). This standard requires that the claimant prove a specific type of mental impairment—one stemming from a nervous system disorder. Yet nothing in Fredman's report suggests that the depression is the result of a "documented physical dysfunction of the nervous system." (*See* AR at 132–40.) Fredman merely associates the depression with the lymphoma and facial disfigurement, saying nothing about any nervous system disorder. Further, through the agency's appeals process, Chavez was given multiple opportunities to provide additional documentation to make this connection but failed to do so. The Court therefore holds that Chavez

6

has not provided sufficient evidence showing that his depression arises from a nervous system disorder, as required by the regulation.

Section 30.910(b) also states that the claimant is not entitled to benefits for mental impairments, for which no numerical assignment exists. *See* 20 C.F.R. § 30.910(b). DOL points out that the AMA Guide that Chavez relies on does not allocate a specific numerical percentage to define depressive disorders. (Doc. 16 at 15.) Specifically, chapter 14 of the AMA Guide states that, "[n]umerical impairment ratings are not included; however, instructions are given for how to assess an individual's abilities to perform activities of daily living." (Doc. 15-3 at 1.) Considering this directive, Fredman's conclusion that Chavez's depressive disorder receive a 15 percent rating is not supported by the AMA Guide. Rather, FAB properly construed section 30.910(b) to exclude Chavez's depression from the benefits calculation because the AMA Guide does not provide a rating for this class of mental impairment.

In light of the foregoing, the Court holds that the agency did not act in an arbitrary and capricious manner when it excluded Chavez's depression in its benefits calculation.

**THEREFORE**,

**IT IS ORDERED** that Chavez's Motion in Support of Petition for Review of Final Agency Decision (Doc. 15) is **DENIED**.

**IT IS FURTHER ORDERED** that this case is **DISMISSED** with prejudice.

_____
ROBERT C. BRACK
SENIOR U.S. DISTRICT JUDGE